[Civ. No. 1308. Second Appellate District.—September 19, 1913.]

## EARL NEWMIRE, Respondent, v. CAROLINE F. FORD, Appellant.

ATTORNEY AND CLIENT—CONTRACT TO DEFEND ONE CHARGED WITH CRIME —ACTION FOR BREACH.—An attorney who has a contract for one thousand five hundred dollars to defend a person charged with a crime, and to employ necessary physicians, detectives, and other help when the same becomes necessary, cannot recover from the client for a breach of the agreement, when there is no evidence as to what would be a reasonable or necessary expenditure for such help, and it is a matter of conjecture whether any sum would remain as compensation to the attorney for his services after the making of the agreed expenditures.

ID.—UNCONSCIONABLE CONTRACT OF ATTORNEY—DAMAGES FOR BREACH.— The contract in this case between a person charged with a criminal offense and a young and inexperienced attorney to pay the latter one thousand five hundred dollars in any event for making the defense, is unconscionable and the attorney can recover only reasonable damages for its breach.

ID.—TIME FOR BRINGING ACTION BY ATTORNEY.—If the contract were one proper for enforcement, no sum was, under the optional right of the client, due from the client for sixty days after the execution of the agreement, and, the action being brought before the expiration of such time was premature.

ID.—AMOUNT OF RECOVERY BY ATTORNEY.—But if the attorney possessed a present right of action for damages actually sustained through the client's breach, it was an abuse of discretion for the trial court to allow him one thousand dollars' damages, if the only services actually shown to have been performed by the attorney consisted of one and one-half hours' talk with the client at the jail, and a single visit to the courthouse for the purpose of examining the stenographer's notes taken at the preliminary hearing.

ID.—SHOWING OF ACTUAL DAMAGES—NECESSITY OF MAKING.—It was incumbent upon the attorney, conceding that he had a right of action, to show what damages he actually had sustained by reason of the breach of the contract.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. John L. Childs, Judge presiding.

The facts are stated in the opinion of the court.

John S. Steely, for Appellant.

Newmire & Morris, for Respondent.

ALLEN, P. J.—The action was one upon a written contract alleged to have been entered into between plaintiff and defendant, and was in these words:

"This agreement, made and entered into this 5th day of June, 1911, witnesseth: That, whereas Earl Newmire, Esq., attorney at law, has undertaken, first, the defense of Caroline F. Ford, charged with the murder of A. P. Ford, and has agreed with the said Caroline F. Ford to procure the testimony of physicians necessary to her proper defense and employ detectives and other help when the same becomes necessary; and secondly, has further undertaken on behalf of said Caroline F. Ford to have the last will and testament of said A. P. Ford set aside and procure for her the share of said A. P. Ford's estate to which she believes herself justly entitled.

"Now, therefore, in consideration of the services which have already been rendered and to be rendered in connection therewith, said Caroline F. Ford agrees to pay to said Earl Newmire the following sums and in the following manner, to wit:

"Said Caroline F. Ford agrees to immediately, or as soon as is deemed advisable by said Earl Newmire, to execute a mortgage of her interests in the house, lot and furniture in said house located at No. 1428 W. 30th Street, in the city of Los Angeles, county of Los Angeles, state of California, for the sum of not less than $1000, or if more to pay to said Earl Newmire the sum of $1000 the same way, reserving the balance for her own personal use, and to execute a promissory note for $500, payable in one year from date of executing the said first mortgage, which said note is to be secured by a second mortgage of her interests in said premises. And

the sum of $1,500 is understood to be in full for the services mentioned in the first undertaking on the part of said Earl Newmire, provided the said Caroline F. Ford retains the said Earl Newmire to undertake the setting aside of the last will and testament of A. P. Ford, her deceased husband, or in the case the mortgage upon said premises is not procurable within a month hereof, then to sell her said interests if possible in said house, lot and furniture for the sum of not less than $1,500 and to pay the sum of $1,500 to said Earl Newmire, which sum is to be in full for all services mentioned in the first undertaking above set forth, provided the said Caroline F. Ford retains the said Earl Newmire to undertake the setting aside of the last will and testament of A. P. Ford, her deceased husband.

"Or in case she cannot mortgage or dispose of the said property within two months from date hereof, then the said Caroline F. Ford agrees to execute and deliver her promissory' note to said Earl Newmire for a sum of $1,500, payable in thirty days, which said note is to be secured by mortgages upon the premises and the furniture located in said house as above mentioned, which said note, if collectible, is to be in full for all services mentioned in the first undertaking above set forth, provided the said Caroline F. Ford retains the said Earl Newmire to undertake the setting aside of the last will and testament of A. P. Ford, her deceased husband.

"And said Caroline F. Ford agrees to pay to said Earl Newmire in return for his undertaking the setting aside of the last will and testament of A. P. Ford, her deceased husband, and for the recovery of the portion of his estate to which she believes herself justly entitled, one-half of all moneys or property recovered by her from the estate of said A. P. Ford, deceased.

"In witness whereof, the parties hereto have hereunto affixed their hands and seals the day and year first above written.

"Caroline F. Ford,

"Earl Newmire.

"Subscribed and sworn to before me this 5th day of June, 1911.

(Seal)

"F. M. Shepard,

"Notary Public."

The answer of defendant admits the execution of the contract, but alleges that the same was procured through fraudulent representations, and was immediately rescinded upon discovery of the fraud. Further, that at the time when defendant entered into such contract she was of unsound mind; that it had been reported to her that plaintiff was a lawyer of great experience, learning, and skill in the trial of murder cases; that one Rogers, her regular attorney, was less competent; that such regular attorney was not attending to her case; and being so weak mentally, she yielded to the solicitations and entered into the agreement. That such representations were untrue; that on the succeeding day, being apprised of the falsity of the representations, she rescinded said agreement. She denies that plaintiff entered into her defense, or performed any services in her behalf therein, or that any damage was suffered by plaintiff.

The trial court found that defendant, at the time of entering into said contract, was of sound mind, that no undue influence was exerted, and that because of the breach on defendant's part plaintiff had suffered damages in the sum of one thousand dollars, for which sum, with costs, judgment was entered. From this judgment, and from an order denying a new trial, defendant appeals upon a statement of the case.

The agreement is somewhat unique, not only as a verified contract, but with reference to its terms generally. While it recites that plaintiff has undertaken the defense of defendant, the only thing he had expressly agreed to do in connection therewith was to employ physicians, detectives, and help when it became necessary. Further, the sum stipulated as compensation or reimbursement is conditioned upon employment in another case, civil in its nature, and for which plaintiff was to receive one-half of an estate to be thereby recovered. Further, no money was made payable, but it was agreed that if defendant did not sell certain property, or mortgage the same for her own use and to realize money to be paid to plaintiff, she was, within two months from the date of the contract, to execute to plaintiff her note for one thousand five hundred dollars, payable in thirty days and secured by mortgage, which note and mortgage, if collectible, were to be received as full compensation, provided employment

in the civil case followed. It would seem that if plaintiff was not employed in the civil case, or if the note was uncollectible, the extent of his fees in the criminal case was not stipulated. Considering the whole contract, we are unable to see how the learned trial judge could determine therefrom its terms, or the obligations imposed upon either of the parties. It does not appear from allegation or evidence in the record what amount would be a reasonable or necessary expenditure for physicians, detectives, and help; the necessity for help through the employment of a competent criminal lawyer being obvious from the matters appearing in the record. It is a rule laid down by section 3358 of the Civil Code, that no person can recover a greater amount in damages for the breach of an obligation than he could have gained by the full performance. Whether any sum would have remained as compensation to plaintiff for his services after agreed expenditures were made, is a matter of conjecture. If the contract be considered as an agreement to pay one thousand five hundred dollars in any event as a compensation for plaintiff's services, the youth and inexperience of plaintiff; the fact that he had never tried a murder case, and had had but a very limited experience in the trial of any class of cases, the circumstances surrounding the execution of the contract, and the surroundings of the parties would indicate that such a contract would be, within the spirit of section 3359 of the Civil Code, unconscionable and contrary to substantial justice, in which event only reasonable damages could be recovered. But were the contract the basis of the action one proper for enforcement, under the optional right given defendant no sum was due from her for sixty days after the execution of the agreement, and the action being brought before the expiration of such time, the same is premature. The only services actually shown to have been performed by plaintiff consisted of one and one-half hours' talk with defendant at the jail, a part of which time was taken up in negotiations leading up to the employment, and a single visit to the courthouse for the purpose of examining the stenographer's notes taken at the preliminary hearing. Whether such examination was actually made or not, does not appear. There is not a particle of evidence tending to show what amount would be a reasonable compensation under the cir-

cumstances on account of any services actually rendered. There is no evidence in the record tending to show that plaintiff's damages were one thousand dollars, as found by the court. Were it conceded that plaintiff, upon notice on defendant's part that she would not comply with the contract, possessed a present right of action for damages actually sustained through defendant's breach, it, nevertheless, was incumbent upon him to show what damages he had actually sustained. Even upon the theory that the trial court, in the absence of direct evidence of value, might assess an amount of damages through an exercise of discretionary power, still we should regard the allowance so made as an abuse of discretion. In our opinion, therefore, under the record, the trial court could only have assessed such damages as would have been reasonable under the circumstances of the case. There is no finding with reference thereto, and we regard the finding that plaintiff suffered damages to the amount of one thousand dollars as unsupported by any evidence.

Judgment and order reversed and cause remanded.

James, J., and Shaw J., concurred.